IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE CO., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13 C 988 |
| MOYENDA M. KNAPP, JUANITA B. RODRIGUEZ, and JOHNSON & BELL, LTD. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Scottsdale Insurance Co. has sued Moyenda Knapp, Juanita Rodriguez, and Johnson & Bell, Ltd. for legal malpractice under Illinois law. The case is in federal court based on diversity of citizenship. Defendants have moved for summary judgment on the ground that Scottsdale is not subrogated to the rights of defendants' former client and therefore lacks standing to sue. Scottsdale has cross-moved for entry of summary judgment in its favor on its legal malpractice claim and defendants' affirmative defenses. Scottsdale has also separately moved to strike two of defendants' expert disclosures. For the reasons stated below, the Court partly grants and partly denies Scottsdale's motion for summary judgment, denies defendants' motion for summary judgment, and denies Scottsdale's motion to strike without prejudice.

## Background

In 2005, the City of Markham brought criminal charges against Terrance White, a Markham police officer who had obtained secondary employment as a bank security

guard. Markham alleged that White committed theft by working shifts for the police department while clocked in at the bank. A jury found White not guilty on October 3, 2007.

In 2008, White sued Markham for malicious prosecution in Illinois state court. Upon being served with a summons, Markham tendered the defense of the case to Scottsdale pursuant to a liability insurance policy it had purchased from Scottsdale. Markham also sought indemnification. In May 2008, Scottsdale declined coverage for both defense and indemnification on the ground that the White case fell within the insurance policy's "employment policies or practices" exclusion. In October 2010, Markham again requested a defense and indemnification in connection with White's case. Scottsdale again declined coverage that same month.

Markham retained Johnson & Bell to defend the White case. The case went to trial in February 2011, and a jury returned a $2,253,273 verdict in favor of White. Johnson & Bell then filed a post-trial motion seeking judgment notwithstanding the verdict or, in the alternative, a new trial. The state trial court denied the motion.

A month before filing the post-trial motion, Markham made a third demand on Scottsdale for a defense and indemnification in the White case. In April 2011—four days after the post-trial motion was filed—Scottsdale reversed its previous decisions and agreed to defend and indemnify Markham. Scottsdale then terminated Johnson & Bell, retained Rory Dunne to represent Markham for the remaining proceedings, and ultimately settled the case for $1.7 million.

While the malicious prosecution case was ongoing, another proceeding regarding White's employment was taking place before the Markham Board of Police

2

and Fire Commissioners. In June 2011, the Board terminated White for violating Markham's secondary employment policy. Two years later, an Illinois circuit court judge reversed the Board's decision, finding that it was against the manifest weight of the evidence. Markham timely appealed the circuit court's decision, but it settled with White before the appeal was heard. Pursuant to the settlement agreement, the police department reinstated White and credited his pension for the years that he had been suspended.

Scottsdale, as subrogee of Markham, sued defendants—Johnson & Bell and two attorneys with that firm—for legal malpractice in early February 2013. Scottsdale claims that, before it took over the defense of White's malicious prosecution case, defendants were negligent in their representation of Markham.

**Discussion**

Defendants have moved for summary judgment on the ground that Scottsdale is not a subrogee and therefore lacked standing to sue. Scottsdale has cross-moved for summary judgment on its legal malpractice claim and on defendants' affirmative defenses.

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

3

*Anderson*, 477 U.S. at 248. On cross-motions for summary judgment, the court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

In addition to its motion for summary judgment, Scottsdale has moved to strike two of defendants' expert disclosures. The Court has determined that the summary judgment motions do not turn on these reports, and thus the Court need not consider the motion to strike at this time. The motion to strike is therefore denied without prejudice to renewal as a *motion in limine* before trial.

**A.     Subrogation**

Scottsdale has sued defendants as a subrogee of Markham. Subrogation is "a doctrine which allow[s] a person compelled to pay the debt or claim of another to succeed to that person's rights with respect to the debt or claim so paid." *Am. Family Mut. Ins. Co. v. N. Heritage Builders, LLC*, 404 Ill. App. 3d 584, 588, 937 N.E.2d 323, 326 (2010). Scottsdale contends that it is subrogated to Markham's rights because it defended and indemnified Markham in the White case pursuant to their insurance policy.

Subrogation may "arise at common law, by statute or by contract." *Benge v. State Farm Mut. Auto. Ins. Co.*, 297 Ill. App. 3d 1062, 1071, 697 N.E.2d 914, 920 (1998). Scottsdale contends that it is both contractually and equitably subrogated to Markham. Where an insurance policy contains a subrogation provision, however, the insurer may not also assert equitable subrogation. *See Am. Family Mut. Ins. Co.*, 404 Ill. App. 3d at 588, 937 N.E.2d at 327 ("[C]ommon law or equitable subrogation cannot stand in the face of an express contractual right of subrogation."). Thus, whether

4

Scottsdale is subrogated to Markham turns on the insurance policy's subrogation clause.

The insurance policy's subrogation clause provides: "If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. . . . At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them." Pl.'s LR 56.1(a) Stmt., Ex. 2 (Insurance Policy), § 14. The first sentence of this provision establishes that Scottsdale has a right to subrogation; the second sentence sets out Markham's contractual duty to transfer these rights. Arguably, based on the second sentence, the rights are not immediately transferred upon payment; rather, Scottsdale must request the rights and Markham must consent to the transfer. (Of course, if Markham refused, Scottsdale could sue Markham for breach of contract.)

On June 3, 2013, about four months after Scottsdale filed this suit, the City Attorney for Markham, Steven Miller, submitted an affidavit that stated the following:

> 6. [A]s liability insurer for the City of Markham, [Scottsdale] became obligated to indemnify the City of Markham for the amount of the judgment entered in the *White* Case.
> . . .
>
> 8. By virtue of its obligation to indemnify the City of Markham and its payment to White, Scottsdale has become subrogated to the City of Markham's rights against Johnson & Bell, Ltd and its current and former attorneys who represented the City of Markham.
> . . .
>
> 12. To whatever extent the City of Markham may be considered by any court to be a real party in interest in the *Scottsdale* Case, I hereby ratify on behalf of the City of Markham the filing and prosecution of the *Scottsdale* Case by Scottsdale.

*Id.*, Ex. 54 (Miller Affidavit). This affidavit attests to the fact that Markham has transferred its rights to Scottsdale. The Court thus concludes that Scottsdale is contractually subrogated to Markham. For this reason, the Court need not consider defendants' arguments for why equitable subrogation is inappropriate under the particular circumstances of this case.

Defendants argue that Scottsdale cannot assert contractual subrogation because its complaint only alleges equitable subrogation. Although it is true that the complaint only alleges equitable subrogation, "[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *see also Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all. It is of no moment therefore that . . . [the] complaint identified the wrong statute as the basis for [plaintiffs'] claim, as long as their allegations gave notice of a legally sufficient claim, and they brought the legal support for their claim to the district court's attention in their response to the defendants' summary judgment motion."). The complaint alleges that Scottsdale was subrogated to Markham because it paid a settlement "[p]ursuant to its duty of indemnification and on Markham's behalf . . . ." Compl. ¶ 1. That is sufficient to put defendants on notice of Scottsdale's contractual subrogation claim.

Although Scottsdale is unquestionably subrogated to Markham now, it could be argued that Scottsdale was not subrogated at the time of filing. The affidavit was obtained four months after the complaint was filed and does not state the date on which

transfer of rights occurred (assuming a formal transfer was required). Even if Scottsdale was not subrogated at the time of filing, however, dismissal would be appropriate only if this point implicated subject matter jurisdiction such that subrogation had to exist at the moment Scottsdale filed suit.

Although the parties (and some Illinois courts) characterize subrogation as a question of standing,[1] it is actually a question of whether the insurer is a real party in interest under Rule 17 of the Federal Rules of Civil Procedure. In diversity actions, the question of whether a party is a real party in interest is governed by state law. *See Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996).

Illinois law provides that "[a]ny action hereafter brought by virtue of the subrogation provision of any contract . . . shall be brought either in the name or for the use of the subrogee; and the subrogee shall in his or her pleading on oath, or by his or her affidavit if pleading is not required, allege that he or she is the actual bona fide subrogee and set forth how and when he or she became subrogee." 735 ILCS 5/2-403(c). "Section 2-403, although mandatory, is not jurisdictional." *See Allianz Versicherungs-Ag v. Fed. Ins. Co.*, 199 Ill. App. 3d 421, 424, 557 N.E.2d 313, 315 (1990). Thus, even if Scottsdale was not the real party in interest at the time it filed suit, the Court need not dismiss the complaint for lack of jurisdiction.

**B.   Scottsdale's legal malpractice claim**

Scottsdale has moved for summary judgment on its legal malpractice claim. The

---

[1] Even if this characterization were correct, the result would not change. Unlike federal law, in Illinois "standing has nothing to do with subject-matter jurisdiction." *People v. Four Thousand & Eight Hundred Fifty Dollars ($4,850) U.S. Currency*, 2011 IL App (4th) 100528, ¶ 14, 952 N.E.2d 1259, 1263 (2011); *see also, e.g., People v. Henderson*, 2011 IL App (1st) 090923, ¶ 40, 961 N.E.2d 407, 421-22 (2011).

7

elements of legal malpractice under Illinois law are: (1) an attorney-client relationship; (2) a duty arising out of that relationship; (3) a breach of that duty; (4) proximate causation; and (5) actual damages. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To establish proximate causation, Scottsdale "must show that but for the attorney's malpractice, [it] would have prevailed in the underlying action." *Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) (internal quotation marks omitted). "Illinois courts have stated that it is generally preferable to 'leave proximate cause to juries because it is often debatable, and fair minded persons might reach different outcomes[.]'" *Id.* However, "Illinois courts do not hesitate to grant summary judgment when the resolution of a dispute about causation turns entirely on legal, rather than factual, issues." *Id.* at 347. To survive summary judgment, defendants must point to evidence from which a reasonable jury could find that at least one of the elements of legal malpractice is not satisfied.

### 1. Failure to assert Tort Immunity Act as a defense

Scottsdale argues that defendants committed malpractice by failing to assert section 2-106 of the Tort Immunity Act as an affirmative defense. Section 2-106 provides that "[a] local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106. Because White alleged that the malicious prosecution originated with Officer James Knapp's oral misrepresentation to the state's attorney, Scottsdale contends, section 2-106 would have provided "a complete defense in the White Case . . . ." Pl.'s Mem. in Supp. of Summ. J. at 4.

8

In response, defendants note that unlike section 2-106, section 2-208 of the Tort Immunity Act expressly covers malicious prosecutions and permits claims against public entities for malicious prosecution. Section 2-208 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, *unless he acts maliciously and without probable cause.*" 745 ILCS 10/2-208 (emphasis added). Thus, defendants assert, section 2-208 controls, and a defense based on section 2-106 would have been unavailing.

Based on their language, both section 2-106 and section 2-208 arguably apply to the White case. As defendants note, however, section 2-208 is the more specific of the two provisions: section 2-106 applies generally to oral promises and misrepresentations of public employees, but section 2-208 is directed at judicial proceedings instituted or prosecuted by public employees. "Where a general statutory provision and a more specific statutory provision relate to the same subject," Illinois courts "presume that the legislature intended the more specific provision to govern." *Moore v. Green*, 219 Ill. 2d 470, 479, 848 N.E.2d 1015, 1021 (2006). And with regard to the Tort Immunity Act, the Illinois Supreme Court has repeatedly held that, when two immunities conflict, the more specific immunity controls.[2] *See id.* at 474, 848 N.E.2d at 1018; *Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 233-34, 864 N.E.2d 176, 188 (2007).

---

[2] Certain of the immunities provided in the Tort Immunity Act include "conditional language" (that is, language that expressly provides for exceptions to the immunity, such as "except as otherwise provide by this Act"). That does not alter this analysis. "Even when an immunity provision does not contain conditional language . . . ," the Illinois Supreme Court "has not hesitated to consider whether the immunity afforded by one provision might be negated or otherwise limited by some other applicable provision." *Murray*, 224, Ill. 2d at 233, 864 N.E.2d at 188.

9

The Court's reading of section 2-208 finds support in *Village of Sleepy Hollow v. Pulte Home Corp.*, 336 Ill. App. 3d 506, 783 N.E.2d 1093 (2003). There, an Illinois appellate court considered whether section 2-208's exception applied when another immunity provision, section 2-201, applied as well. *Id.* at 510, 792 N.E.2d at 1096. Section 2-201 provides immunity for discretionary decisions, but it does not include an exception like that in section 2-208. The court held that the immunities "operated in conjunction with each other" and were therefore "subject to the exception set forth in section 2-208 for actions brought maliciously and without probable cause." *Id.* at 512, 792 N.E.2d at 1097-98. The court noted that "in discussing the scope of governmental immunity under the Immunity Act," the Illinois Supreme Court had cited section 2-208 as an exception that the legislature "recognized" and "enumerated . . . in the plain language of the Act." *Id.* at 510-11, 792 N.E.2d at 1096-97 (quoting *Vill. of Bloomingdale v. CDG Enters., Inc.*, 196 Ill. 2d 484, 494-95, 752 N.E.2d 1090, 1096 (2001)). Had the legislature "intended for [section 2-208] to apply only under circumstances that fall outside the scope of section 2-201," the court reasoned, "it would have done so." *Id.* at 511, 792 N.E.2d at 1097. The court also observed that the alternative interpretation would eviscerate the section 2-208 exception, as "it is difficult to conceive of a situation in which a public employee institutes and prosecutes a judicial proceeding without exercising his or her broad discretion . . . ." *Id.*

Nothing in the text of section 2-106 suggests that it should be read differently from section 2-201. As in *Sleepy Hollow*, moreover, Scottsdale's reading of section 2-106 would eviscerate section 2-208's exception. To sustain a claim for malicious

prosecution, there must be "the absence of probable cause for such proceeding," which in turn means "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72, 791 N.E.2d 1206, 1219 (2003). Thus, under Illinois law, probable cause is absent when the person lacks a reasonable basis to believe that the arrested person has committed a crime. The person initiating a prosecution, whether a police officer or a citizen complainant, nearly always makes an oral representation, either to the police or (as here) to a prosecutor touching on the existence of probable cause. Thus Scottsdale's reading of the Tort Immunity Act would extend immunity to virtually all malicious prosecution cases, rendering section 2-208's exception effectively meaningless. The Court sees no viable basis to adopt such an interpretation. *See DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 219 Ill. 2d 497, 510, 848 N.E.2d 1030, 1039 (2006) ("A court should construe a statute, if possible, so that no term is rendered superfluous or meaningless.").

In short, a reasonable jury could find that the defendants' failure to assert section 2-106 of the Tort Immunity Act as a defense in the White case did not constitute malpractice.

### 2. Failure to counter evidence of damages for past lost earnings, future lost earnings, and future lost pension

The parties agree that the trial court in White's case erred by permitting him to recover damages for past lost earnings, future lost earnings, and future lost pension. Specifically, they agree that White's termination was caused by his violation of Markham's secondary employment policy, not by his prosecution for theft, and that as a

11

result, the theft prosecution did not cause White to lose earnings or pension payments. The parties also agree that a petition for administrative review was the sole appropriate legal mechanism for White to appeal the Board's termination decision and seek to recover lost earnings, future earnings, and future lost pension.

The parties disagree, however, about whether defendants' negligence caused the trial court's errors. Scottsdale first argues that defendants negligently failed to present evidence to the jury about the Board proceeding, including by failing to disclose a witness who could have testified regarding the proximate cause of White's termination. Defendants explain, however, "that they were precluded from doing so by the trial court's decision to reconsider [an] earlier ruling and grant White's *motion in limine* to bar such [evidence]." Def.'s Resp. to Pl.'s LR 56.1(a) Stmt., ¶¶ 40-42, 47. That *motion in limine* sought to bar "any testimony, evidence, production of documents, argument, or reference to the outcome of the Markham Board of Fire and Police Commissioners regarding Plaintiff's employment with the City of Markham, based on relevancy." Pl.'s LR 56.1(a) Stmt., Ex. 29 (White's Mots. in Limine), ¶ 24.

If the trial court in White's case did indeed grant this *motion in limine*, it would not have been malpractice for defendants not to introduce this evidence. Scottsdale disputes, however, the contention that the trial court granted the *motion in limine*. Scottsdale contends that the trial court's decision to exclude this evidence was based on Markham's own *motion in limine*, in which it sought to bar "[p]laintiff and [p]laintiff's attorneys from attempting to use any evidence of any other lawsuits or claims pending or previously raised against [d]efendant . . . ." *Id.*, Ex. 31, (Markham's Mot. in Limine #5), at 2. According to Scottsdale, defendants negligently crafted an overly broad

12

*motion in limine* and thus caused the trial court to exclude evidence that would have been highly beneficial to Markham.

Because the discussion about the evidence concerning the Board proceeding was held off the record, it is unclear whether the trial court relied on Markham's *motion in limine* or reconsidered and granted White's *motion in limine*. *See id.*, Ex. 18 (Trial Tr.), at 81-86 (off-the-record discussion about admissibility of evidence concerning the Board proceeding). In support of its position, Scottsdale points to the objection that led to this off-the-record conversation. That objection cited to Markham's *motion in limine*, not White's. *See id.* at 82-83 ("You mentioned another legal proceeding, and we have a *motion in limine* that forbids us from mentioning other legal proceedings."). At her deposition, however, Juanita Rodriguez denied that the trial court based its decision on Markham's *motion in limine*. *See id.*, Ex. 12 (Rodriguez Dep.), at 50-51 ("[O]ur Motion in Limine No. 5 had nothing to do with this *motion in limine*" to bar "bring[ing] in anything regarding the [B]oard hearings."). Her testimony is supported by the *motion in limine* itself, which applied exclusively to White and, therefore, arguably would not have barred evidence introduced by Markham. *See id.*, Ex. 31 (Markham's Mot. in Limine #5), at 2. It is also supported by Rodriguez's colloquy with the trial court during the jury instruction conference. *See id.*, Ex. 20 (Trial Tr.), at 117 (observing that the trial judge "granted [White's] *motion in limine* preventing [Markham] from getting to [the Board's decision]"). Because there are facts supporting each party's interpretation of what transpired in the off-the-record discussion, the Court concludes that there is a genuine dispute of fact about whether defendants negligently filed an overly broad and ultimately harmful *motion in limine*.

Scottsdale also argues that defendants negligently failed to obtain a ruling that a petition for administrative review was White's "sole remedy with respect to his damages for loss of earnings or benefits from Markham." Pl.'s Mem. in Supp. of Summ. J. at 6-7. But defendants did argue for such a ruling at the jury instruction conference. *See* Pl.'s LR 56.1(a) Stmt., Ex. 20 (Trial Tr.), at 111-13. The trial court decided to allow White to seek lost earnings and pension damages but instructed Markham to bring a post-trial motion. *See id.* at 113-14. Markham did so. *See* Def.'s LR 56.1(a) Stmt., Ex. 20, at 20 (including administrative review argument in post-trial motion). Scottsdale's administrative review argument thus does not provide a basis for entry of summary judgment in its favor.

### 3. Failure to seek exclusion of White's testimony about future lost earnings and pension

Scottsdale argues that defendants failed to prevent (through a *motion in limine* or an objection) White from testifying about his future lost earnings and pension. The trial court would have barred this testimony, Scottsdale contends, because White's witness disclosures did not indicate that he would testify about these matters.

Illinois Supreme Court Rule 213(f) provides that "[u]pon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial" and provide certain information about their testimony. Ill. Sup. Ct. R. 213(f). For lay witnesses, "the party must identify the subjects on which the witness will testify." *Id.* "An answer is sufficient if it gives *reasonable notice* of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." *Id.* (emphasis added). To this end, the answer need only identify the topics of testimony; it need not provide a summary. *Id.* cmt. f. Thus, if a lay witness is testifying

about a car accident, "[t]he answer would not be proper if it said only that the witness will testify about: 'the accident.'" *Id.*; *see also Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 454, 818 N.E.2d 713, 721 (2004) ("Although detailed disclosure for lay witnesses is no longer required under the newly amended version of Rule 213, plaintiff's notice that he would testify as to matters set forth in his complaint is a generalized statement akin to the committee comments' example noting that merely testifying about an 'accident' is improper disclosure."). The answer would be proper, on the other hand, if it said "that the witness will testify about: (1) the path of travel and speed of the vehicles before impact, (2) a description of the impact, and (3) the lighting and weather conditions at the time of the accident." *Id.* (internal quotation marks omitted).

In his initial answers to Markham's interrogatories, White disclosed that he would testify to "the damages he has sustained as result of . . . [his] suspension without pay from the City of Markham Police Department." Pl.'s LR 56.1(a) Stmt., Ex. 24 (Answers to Interrogs.), at 10. In his supplemental answers to Markham's interrogatories, White added that he would "testify that he suffered lost wages and benefits, and will testify as to the amount of lost wages and benefits he incurred as a result of Defendant's malicious conduct." Defs.' Resp. to Pl.'s LR 56.1(a) Stmt., Ex. F (Supp. Answers to Interrogs.). The Third Amended Complaint states, furthermore, that "[a]s a direct and proximate result of the aforestated intentional and malicious actions of [d]efendant . . . [plaintiff suffered] the loss of his employment and wages . . . ." *Id.*, Ex. E (Third Am. Compl.), at ¶ 22. Given these facts, a reasonable jury could find that defendants did not act negligently regarding White's testimony about his future earnings and pension.

**C. Defendants' affirmative defenses**

Scottsdale has moved for summary judgment on each of defendants' affirmative defenses.

**1. Lack of standing**

Defendants' first affirmative defense is that Scottsdale "is not legally entitled to pursue the instant legal malpractice action against the [d]efendants as equitable subrogee of the City of Markham." Answer at 24-26. For the reasons stated above, Scottsdale is contractually subrogated to Markham. Scottsdale is therefore entitled to summary judgment on the first affirmative defense.

**2. Failure to mitigate damages: appeal**

Defendants' second affirmative defense is that Scottsdale failed to mitigate damages by foregoing an appeal from the judgment in White's case. Answer at 26-28. As Scottsdale points out, however, there is no evidence in the record from which a reasonable jury could find that an appeal was likely to succeed. Defendants point to an email from post-trial counsel, Rory Dunne, in which he "place[s] the chances of success [on appeal] at better than 50/50." Def.'s LR 56.1(a) Stmt., Ex. 27 (6-10-2011 Dunne Email). In an email sent two months later, however, Dunne concluded "that there is less than a 50/50 chance of prevailing upon appeal." Pl.'s LR 56.1(a) Stmt., Ex. 40 (8-12-2011 Dunne Email). He explained that "probable cause as a matter of law can only be found where there is no fact in dispute in the circumstances establishing probable cause" and that "there are many facts in dispute with respect to the circumstances leading to the arrest of former Officer Terry White . . . ." *Id.* Accordingly, Dunne suggested that "it might be a good time to test the settlement waters." *Id.* Dunne later

16

testified that he thought that the appeal was "not a winner."  *Id.*, Ex. 38 (Dunne Dep.), at 212.

Although an injured party must "exercise reasonable diligence and ordinary care in attempting to minimize damages," the party need not "take steps that involve undue risk or burden."  *Ner Tamid Congregation v. Krivoruchko*, 638 F. Supp. 2d 913, 920 (N.D. Ill. 2009); *see also FirstMerit Bank v. Emerald Props., LLC*, 2014 WL 1292865, *5 (N.D. Ill. Mar. 28, 2014) (holding that plaintiff was not required to mitigate where doing so "would require plaintiff to absorb added financial risk").  By retaining an attorney to assess the likelihood of success on appeal, Scottsdale exercised reasonable diligence and ordinary care in attempting to minimize its damages.  After several months of review, Dunne concluded that appeal was unlikely to succeed.  Defendants have offered no evidence from which a reasonable jury could find that Scottsdale was required to appeal against the advice of counsel, thereby assuming undue financial risk.  Accordingly, Scottsdale is entitled to summary judgment on the second affirmative defense.

### 3. Failure to mitigate damages:  settlement reimbursement mechanism

Defendants' third and fourth affirmative defenses are that "Scottsdale failed to properly mitigate its damages by entering into a settlement agreement with White" that "provide[d] a mechanism through which [Scottsdale] would be reimbursed for the portion of the settlement amount attributable to the lost pension and lost earnings damages" in the event that White was reinstated through the Board proceedings.  Answer at 28-31.  White was, in fact, ultimately reinstated.  Thus, a reimbursement mechanism would have mitigated Scottsdale's damages.

17

Scottsdale argues that "[t]hese defenses proceed on a number of false premises." Pl.'s Mem. in Supp. of Summ. J. at 27. Most importantly, defendants contend, "[t]here is no evidence [that] White or his counsel would have paid any part of the settlement proceeds back to Scottsdale." Id. at 27-28.

In response, defendants point to two pieces of evidence. First, the report of their expert, James DeAno, states that "[t]he failure to include a return or reimbursement provision in the settlement agreement with White was a failure to mitigate damages." Defs.' Resp. to Pl.'s LR 56.1(a) Stmt., Ex. B (DeAno Report), at 12. This sort of mechanism, the expert explains, is common "[i]n situations where a claimant reaches a settlement with one party which compensates the claimant for a particular claim or category of damages which that claimant is also seeking from another party or in another forum . . . ." Id. Second, Scottsdale's post-trial attorney testified that a reimbursement was not "thought about one way or another." Pl.' LR 56.1(a) Stmt., Ex. 38 (Dunne Deposition), at 203-04. Based on this evidence, there is a genuine dispute of fact about whether Scottsdale negligently failed to pursue such a mechanism. Scottsdale therefore is not entitled to summary judgment on the third or fourth affirmative defenses.

## Conclusion

For the foregoing reasons, the Court denies Scottsdale's motions for summary judgment on the legal malpractice claim [dkt. no. 92] and the third and fourth affirmative defenses [dkt. no. 96], but grants its motions for summary judgment on the first and second affirmative defenses [dkt. no. 93 & 95]. The Court denies defendants' motion for summary judgment [dkt. no. 86]. The Court denies Scottsdale's motion to strike

plaintiffs' expert disclosures [dkt. no. 89 & 90], without prejudice to renewal as a *motion in limine*.  Defendants' motion to strike portions of Scottsdale's Local Rule 56 statement [dkt. no. 126] is terminated as moot; the Court did not consider the portions in question. The case is set for a status hearing on May 11, 2015 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

                                                            _____
                                                            MATTHEW F. KENNELLY
                                                            United States District Judge

Date:  April 30, 2014